740 N.W.2d 678 (2007)
276 Mich. App. 678
BAY COUNTY PROSECUTOR, Plaintiff-Appellant
v.
Richard Alexander NUGENT, Defendant-Appellee.
Docket No. 267069.
Court of Appeals of Michigan.
Submitted June 5, 2007, at Lansing.
Decided July 3, 2007, at 9:00 a.m.
Released for Publication October 26, 2007.
*679 Joseph K. Sheeran, Prosecuting Attorney, and John C. Keuvelaar, Assistant Prosecuting Attorney, for the plaintiff.
Smith & Brooker, P.C. (by George B. Mullison), Bay City, for the defendant.
Before: TALBOT, P.J., and MARK J. CAVANAGH and METER, JJ.
PER CURIAM.
Plaintiff appeals as of right the trial court's dismissal of its complaint to revoke defendant's acknowledgment of parentage. We reverse and remand for further proceedings consistent with this opinion.
On June 25, 2004, Amy Dyjak gave birth to a son. Dyjak was dating defendant Richard A. Nugent, who was married but in the process of seeking a divorce. Defendant signed an affidavit of parentage acknowledging his paternity of Dyjak's son. Defendant had undergone a vasectomy three to four years before the child was conceived; however, he believed that *680 he could be the child's biological father because his previous girlfriend had also claimed that he impregnated her before she suffered a miscarriage.
In September 2004, defendant learned that there was a possibility that his 14-year-old son was actually the biological father of Dyjak's son. Dyjak was arrested and charged with criminal sexual conduct for engaging in sexual relations with defendant's son. In April 2005, a deoxyribonucleic acid (DNA) analysis was performed and revealed that defendant's son was, in fact, the biological father.
In August 2005, Dyjak pleaded no contest to one count of second-degree criminal sexual conduct. As part of her plea agreement, she voluntarily relinquished her parental rights to the child. Plaintiff subsequently filed a complaint in the circuit court seeking to revoke defendant's acknowledgment of parentage under MCL 722.1011. The matter was transferred to the family division of the circuit court and consolidated with related actions that were pending in that court.[1] Plaintiff claimed that because defendant erroneously believed that he was the child's biological father when he signed the affidavit of parentage, a "mistake of fact" existed that justified the revocation of defendant's acknowledgment of parentage. Defendant conceded that he was not the biological father; however, he contested the revocation because he wanted to remain the legal father.
The trial court determined that, under MCL 722.1011, defendant's son did not have any right to challenge defendant's acknowledgment of parentage. The trial court also determined that there was no basis for plaintiff to bring the action on behalf of defendant's son. Because defendant intended to be the child's father when he signed the affidavit of parentage, and because he intended to remain as the father after he learned that he was not the biological father, there was no mistake of fact that would justify revocation of defendant's acknowledgment of parentage. Thus, the trial court dismissed plaintiff's complaint with prejudice. This appeal followed.
Plaintiff argues that the trial court erred in concluding that a mistake in fact was not established. We agree.
We review the trial court's factual findings for clear error. See In re Erickson Estate, 202 Mich.App. 329, 331, 508 N.W.2d 181 (1993). "A finding is said to be clearly erroneous when the reviewing court is left with a definite and firm conviction that a mistake has been made." Id. The trial court's application of the law to the facts is reviewed de novo. See In re Eggleston Estate, 266 Mich.App. 105, 112, 698 N.W.2d 892 (2005). Statutory interpretation is a question of law that this Court reviews de novo. In re McEvoy, 267 Mich.App. 55, 59, 704 N.W.2d 78 (2005).

*681 "`The paramount rule of statutory interpretation is that we are to effect the intent of the Legislature. Tryc v. Michigan Veterans' Facility, 451 Mich. 129, 135, 545 N.W.2d 642 (1996). To do so, we begin with the statute's language. If the statute's language is clear and unambiguous, we assume that the Legislature intended its plain meaning, and we enforce the statute as written. People v. Stone, 463 Mich. 558, 562, 621 N.W.2d 702 (2001). In reviewing the statute's language, every word should be given meaning, and we should avoid a construction that would render any part of the statute surplusage or nugatory. Altman v. Meridian Twp., 439 Mich. 623, 635, 487 N.W.2d 155 (1992).'" [AFSCME v. Detroit, 468 Mich. 388, 399, 662 N.W.2d 695 (2003), quoting Omelenchuk v. City of Warren, 466 Mich. 524, 528, 647 N.W.2d 493 (2002) (citation omitted).]
The Acknowledgment of Parentage Act (APA), MCL 722.1001 et seq., provides that "[i]f a child is born out of wedlock, a man is considered to be the natural father of that child if the man joins with the mother of the child and acknowledges that child as his child by completing a form that is an acknowledgment of parentage." MCL 722.1003(1).
An acknowledgment signed under this act establishes paternity, and the acknowledgment may be the basis for court ordered child support, custody, or parenting time without further adjudication under the paternity act. . . . The child who is the subject of the acknowledgment shall bear the same relationship to the mother and the man signing as the father as a child born or conceived during a marriage and shall have the identical status, rights, and duties of a child born in lawful wedlock effective from birth. [MCL 722.1004.]
There is no dispute that Dyjak and defendant executed the acknowledgment of parentage consistently with the requirements of the APA. Thus, the acknowledgment established paternity, and defendant was legally considered the natural father of Dyjak's son. See MCL 722.1003(1); MCL 722.1004. A man who signs an acknowledgment of parentage becomes the child's "legal parent." Killingbeck v. Killingbeck, 269 Mich.App. 132, 143-144, 711 N.W.2d 759 (2005).
But MCL 722.1011 provides, in part:
(1) The mother or the man who signed the acknowledgment, the child who is the subject of the acknowledgment, or a prosecuting attorney may file a claim for revocation of an acknowledgment of parentage. . . .
(2) A claim for revocation shall be supported by an affidavit signed by the claimant setting forth facts that constitute 1 of the following:
(a) Mistake of fact.
It is clear that defendant's son, himself, did not have any right to initiate an action to revoke defendant's acknowledgment of parentage. Under MCL 722.1011(1), "only the mother, the man who signed the acknowledgment, the child, or a prosecuting attorney can file a claim for revocation." Sinicropi v. Mazurek, 273 Mich.App. 149, 168, 729 N.W.2d 256 (2006). It appears undisputed that plaintiff initiated this action on behalf of defendant's son. Presumably, plaintiff had motive to initiate this action because, unless and until the acknowledgment of parentage was properly revoked, neither plaintiff nor defendant's son could proceed with a paternity action under the Paternity Act. See id. at 163, 729 N.W.2d 256; see, also, MCL 722.714(2).
*682 Under MCL 722.1011(1), plaintiff is expressly authorized to initiate an action to revoke defendant's acknowledgment of parentage. Nothing in the APA precludes plaintiff from initiating the action on behalf of the child's biological father. We "may read nothing into an unambiguous statute that is not within the manifest intent of the Legislature as derived from the words of the statute itself." Roberts v. Mecosta Co. Gen. Hosp., 466 Mich. 57, 63, 642 N.W.2d 663 (2002). Thus, on the basis of the plain language of MCL 722.1011, plaintiff had authority to initiate this action on behalf of defendant's son, and the motive for doing so was irrelevant.
We also conclude that the trial court erred in holding that plaintiff failed to establish a mistake of fact. See MCL 722.1011(2)(a). The APA does not define "mistake of fact." But there is no indication of a legislative intent to alter the meaning the term "mistake of fact" has acquired in our law, and thus we turn to other cases that have construed it. See Ford Motor Co. v. City of Woodhaven, 475 Mich. 425, 439-440, 716 N.W.2d 247 (2006). "Mistake of fact" has been defined as "`a misunderstanding, misapprehension, error, fault or ignorance of a material fact, a belief that a certain fact exists when in truth and in fact it does not exist.'" Sentry Ins. v. ClaimsCo Int'l, Inc., 239 Mich. App. 443, 447, 608 N.W.2d 519 (2000), quoting Montgomery Ward & Co. v. Williams, 330 Mich. 275, 279, 47 N.W.2d 607 (1951). In Woodhaven, supra at 440, 716 N.W.2d 247, our Supreme Court, quoting Black's Law Dictionary (7th ed.), held that "mistake of fact" was "`[a] mistake about a fact that is material to a transaction.'" Because we opine that "mistake of fact" is a technical term that has acquired a peculiar meaning under the law, the recent Black's Law Dictionary (8th ed.) definition of "mistake of fact"  "[a] mistake about a fact that is material to a transaction; any mistake other than a mistake of law"  is most helpful. See Woodhaven, supra at 440, 716 N.W.2d 247.
Plaintiff established that when defendant signed the affidavit of parentage, defendant believed that he was the biological father of the child. Plaintiff also established that a DNA test later determined that defendant's son, and not defendant, was the biological father. Presentation of the unchallenged DNA evidence was sufficient to establish a mistake of fact. See Sinicropi, supra at 176 n. 14, 729 N.W.2d 256. Regardless of whether defendant intended to be the father when he signed the affidavit of parentage, and whether he intended to remain the legal father after he learned that he was not the child's biological father, the evidence established that defendant's decision to acknowledge paternity in this case was based, at least in part, on a mistaken belief that he was, in fact, the biological father.
Plaintiff proved, by clear and convincing evidence, that defendant was not the biological father. See MCL 722.1011(3). The parties do not argue to the contrary. Nevertheless, MCL 722.1011(3) provides that "[t]he party filing the claim for revocation has the burden of proving, by clear and convincing evidence, that the man is not the father and that, considering the equities of the case, revocation of the acknowledgment is proper." (Emphasis added.) In Sinicropi, supra at 161, 729 N.W.2d 256, this Court explained:
It is plain from the language in MCL 722.1011(3) that the Legislature contemplated situations in which a man executed an acknowledgment of parentage, the man was then determined not to be the biological father, but the acknowledgment *683 of parentage would nonetheless remain valid and intact in the face of an attempted revocation if the equities of the case so dictated, thereby leaving the man who was not the biological father as the natural or legal father and shutting the door on the biological father. This scenario, which played out in the case at bar, could be viewed in a sense as creating an "equitable-like" parent because equity ultimately allows the man to retain his recognition as the natural father under the Acknowledgment of Parentage Act where revocation is rejected despite the lack of any biological connection between the child and the acknowledger. But regardless of the equitable nature of the circumstances, a man executing an acknowledgment of parentage that remains valid in the face of an unsuccessful revocation attempt is considered the natural and legal father of the child. [Emphasis added.][[2]]
Thus, despite clear and convincing evidence that defendant was not the child's biological father, revocation of defendant's acknowledgment of parentage still requires consideration of the equities of the case. In this case, the trial court bifurcated the hearing on plaintiff's complaint to revoke defendant's acknowledgment of parentage. The parties agreed to present evidence concerning the mistake of fact issue and then, if necessary, present evidence concerning the equities of the case. Because the trial court concluded that plaintiff failed to establish a mistake of fact, the court never received evidence, or made any determination, regarding the equities of the case. Thus, we remand this case to the trial court for such a determination. If, on remand, the trial court finds that revocation of the acknowledgment of parentage is proper, considering the equities of the case, the court may take further action in accordance with MCL 722.1011. If the trial court concludes that revocation of the acknowledgment of parentage is proper, defendant would have no parental rights to the child under the doctrine of equitable parenthood. See Killingbeck, supra at 142, 711 N.W.2d 759.
Revocation of defendant's acknowledgment of parentage will not be permitted if, on remand, plaintiff "fails to establish clear and convincing evidence that the equities of the case demand revocation regardless of the fact that another man has clearly and convincingly been shown to be the biological father." See Sinicropi, supra at 162, 729 N.W.2d 256. Unless and until defendant's acknowledgment of parentage is properly revoked, paternity has been established, and defendant's status as the child's father is as unassailable as if the child had been born in wedlock. MCL 722.1004; Sinicropi, supra at 162, 729 N.W.2d 256.
Next, plaintiff contends on appeal that the trial court denied defendant's son due process because defendant's son had a protected liberty interest in his relationship with the child and, in failing to revoke defendant's acknowledgment of parentage, the trial court precluded defendant's *684 son from acknowledging paternity of the child. We disagree. Plaintiff did not assert a due process claim below; therefore, this issue is unpreserved. See STC, Inc. v. Dep't of Treasury, 257 Mich. App. 528, 538, 669 N.W.2d 594 (2003). We review unpreserved constitutional issues for plain error affecting substantial rights. In re Osborne (On Remand, After Remand), 237 Mich.App. 597, 606, 603 N.W.2d 824 (1999).
"The Fourteenth Amendment provides that no State shall deprive any person of life, liberty, or property without due process of law." Lehr v. Robertson, 463 U.S. 248, 256, 103 S.Ct. 2985, 77 L.Ed.2d 614 (1983). The United States Supreme Court has recognized that "the relationship between parent and child is constitutionally protected." Quilloin v. Walcott, 434 U.S. 246, 255, 98 S.Ct. 549, 54 L.Ed.2d 511 (1978). However, "the mere existence of a biological link" does not necessarily merit constitutional protection. Lehr, supra at 261, 103 S.Ct. 2985.
Plaintiff's constitutional argument is premised on the fact that defendant's son is the child's biological father and purportedly had an established relationship with the child. In support of his argument, plaintiff cites Hauser v. Reilly, 212 Mich. App. 184, 188-189, 536 N.W.2d 865 (1995), but the constitutional analysis in that case was obiter dictum; it was not essential to the outcome of the case. See Aichele v. Hodge, 259 Mich.App. 146, 162, 673 N.W.2d 452 (2003); McHone v. Sosnowski, 239 Mich.App. 674, 679, 609 N.W.2d 844 (2000). Moreover, the case involved a child born in wedlock.
In this case, plaintiff's constitutional issue is not ripe for adjudication, and, thus, we decline to address it. First, there has yet to be any determination in this state that a putative father of a child born out of wedlock, without a court determination of paternity, has a protected liberty interest with respect to the child he claims as his own. Second, assuming that a biological father has a protected liberty interest in a situation in which (1) a child is born out of wedlock, (2) the biological father has a substantial or enduring parent-child relationship with the child, and (3) the biological father is otherwise prevented from obtaining an order of filiation and requesting custody, plaintiff failed to establish that the liberty interest arose in this case. See Sinicropi, supra at 170, 729 N.W.2d 256. Because of the bifurcated nature of the lower court proceedings, plaintiff did not present any evidence concerning the alleged parent-child relationship between defendant's son and the child. Without such evidence, it cannot be determined whether the nature of the relationship could have established a protected liberty interest. The fact that there is a biological link between defendant's son and the child, alone, does not merit constitutional protection.
The trial court's order dismissing plaintiff's complaint to revoke defendant's acknowledgment of parentage is reversed, and the matter is remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.
NOTES
[1] The record indicates that plaintiff filed a paternity action on behalf of defendant's son under the Paternity Act, MCL 722.711 et seq.; however, the action was dismissed. See MCL 722.714(2), which provides that "[a]n action to determine paternity shall not be brought under [the Paternity Act] if the child's father acknowledges paternity under the acknowledgment of parentage act. . . ." See, also, Sinicropi v. Mazurek, 273 Mich.App. 149, 163, 729 N.W.2d 256 (2006) (holding that the trial court may not enter an order of filiation if an unrevoked acknowledgment of parentage is already in place). The record also indicates that, before Dyjak voluntarily relinquished her parental rights, plaintiff filed a "dependent/neglect action," alleging that she was an unfit mother. There were no neglect allegations against defendant. However, the trial court's order dismissing plaintiff's complaint indicates that the neglect case remains open, "with the assent of Richard Nugent, until the legal issues in the instant case are sorted out."
[2] This Court's reference to the APA creating an "equitable-like" parent should not be confused with the equitable-parent doctrine. See Sinicropi, supra at 162 n. 5, 729 N.W.2d 256. Moreover, in Van v. Zahorik, 460 Mich. 320, 331, 597 N.W.2d 15 (1999), our Supreme Court declined to extend the doctrine of equitable parenthood outside the context of marriage. Defendant and Dyjak never married. The child was not born or conceived during any marital relationship. Thus, the doctrine of equitable parenthood was not implicated in this case. See id. at 330-331, 597 N.W.2d 15.